IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

HERBERT E. MORTON, JR.,

Petitioner,

v.                                    CASE NO. 06-3031-SAC

RAY ROBERTS, et al.,

Respondents.

MEMORANDUM AND ORDER

This is a pro se petition for writ of habeas corpus, 28
U.S.C. 2254, filed by an inmate of the El Dorado Correctional
Facility (EDCF). Petitioner challenges his state conviction of
aggravated kidnaping. The victim was petitioner's wife who
testified against him concerning altercations on two consecutive
days.

PROCEDURAL HISTORY

Petitioner was convicted upon trial by jury on August 18,
2000, in the District Court of Saline County, Kansas, of
aggravated kidnaping, aggravated battery, and domestic battery.
He was acquitted of criminal threat and rape. Petitioner
directly appealed his convictions of aggravated kidnaping and
aggravated battery to the Kansas Court of Appeals (KCOA). The
KCOA reversed his aggravated battery conviction on April 5, 2002,
finding the trial court erred in failing to give a lesser-
included offense instruction[1], and remanded for new trial. State
v. Morton, Case No. 86100 (Kan.App., April 5, 2002). The KCOA

_____

[1]    The KCOA found it was clear error not to instruct on simple battery as a lesser included
offense of aggravated battery.

affirmed petitioner's aggravated kidnaping conviction.  On July
11, 2002, a Petition for Review was denied by the Kansas Supreme
Court in Case No. 86100.

Petitioner alleges nothing happened in response to the KCOA's
mandate[2] until he filed a "Motion to Correct Illegal Sentence"
pursuant to K.S.A. 22-3504 in Saline County District Court on
March 12, 2003.  The district court, after a hearing, ordered on
April 14, 2003, "that a corrected journal entry be filed striking[3]
the aggravated battery conviction," but leaving the remaining
convictions and sentences intact.  The trial judge, apparently
relying upon petitioner's misdemeanor battery conviction[4] as the
bodily harm element, denied petitioner's challenge to his
aggravated kidnaping conviction.  Morton appealed the denial of
this claim to the KCOA, and was represented by appointed counsel
on appeal.  The issue was stated in appellant's and appellee's
briefs as whether "the district court erred by relying upon an
unrelated battery conviction to constitute support for the bodily
harm element of aggravated kidnapping."  The KCOA affirmed on
February 4, 2005.  Morton's Petition for Review by the Kansas

_____

[2]     In its appellee brief filed in connection with petitioner's appeal of the denial of his state post-conviction motion, the State alleged "the case came before the Court pursuant to the appellate mandate" on October 14, 2003. Petition (Doc. 1), Attach. 5 at 11.  They also stated in this brief that after the case was remanded for new trial on the aggravated battery charge, the "State announced it was not going to proceed" due to the age of the case and the small impact it had on Morton's sentence. Id. at 12.  The date of the State's notice that it would not proceed is not provided.

[3]     Petitioner alleges that after he filed his state motion to correct sentence, the district court dismissed the aggravated battery without trial.

[4]     The State conceded, and the KCOA found, that the district judge's reliance upon the  the misdemeanor battery was erroneous as it had occurred on a different day than the aggravated kidnaping offense.  However, the KCOA found the evidence at trial clearly supported a finding of bodily harm which satisfied that element of aggravated kidnaping, and affirmed because "the district court was correct in denying Morton's motion to correct illegal sentence."

Supreme Court was denied on May 3, 2005.

**CLAIMS**

As ground 1 in his federal Petition, Morton alleges a violation of due process in that the district court allowed his aggravated kidnaping conviction to stand after his aggravated battery conviction was dismissed on direct appeal. He asserts his aggravated kidnaping conviction cannot stand because it is not supported by an underlying felony. He states he raised this issue on direct appeal of his conviction but not in state post-conviction proceedings.

As ground 2 Morton claims he was denied a speedy trial with respect to a new trial of the aggravated battery charge. In support, he alleges that after the KCOA ordered a new trial on the aggravated battery charge, a new trial was not conducted within speedy trial time limits. He asserts the district court, as a result, lacked "jurisdiction to rule" on the aggravated battery charge. He claims the trial court's inaction "saved the State from . . . proving each element of the . . . aggravated kidnaping charge." Petitioner alleges he raised this issue in the state trial court in his motion to correct illegal sentence.

Petitioner seeks to have his sentence for aggravated kidnaping vacated.

**STATUTE OF LIMITATIONS**

Under 28 U.S.C. 2244(d)(1) a person in custody pursuant to a state court judgment has a one-year period from the date his

state conviction becomes "final" by the conclusion of direct review in which to file a 2254 petition. 28 U.S.C. 2244(d)(1)(A). Morton's aggravated kidnaping conviction became "final" 90 days after the Kansas Supreme Court denied review of it on direct appeal (July 11, 2002), or on about October 10, 2002. It follows that the statute of limitations for petitioner to file a federal habeas petition challenging this conviction began running at that time. It appears to have run unabated until petitioner filed his state post-conviction motion on March 12, 2003. Thus, when Morton's state motion was filed, 5 months of the year-long limitations period had expired.

Under 28 U.S.C. 2244(d)(2) the limitation period is tolled for any time spent pursuing state post-conviction relief. See Hoggro v. Boone, 150 F.3d 1223, 1226 (10th Cir. 1998). Specifically, Section 2244(d)(2) reads in part:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section."

Applying the plain language of this statute to the facts of this case, the following tentative computations are made. Morton filed his "Motion to Correct Illegal Sentence" on March 12, 2003. It was denied with respect to his aggravated kidnaping conviction by the trial court and the KCOA, and was no longer "pending" after the Kansas Supreme Court denied review on May 3, 2005. At this time, the federal statute of limitations again commenced running. See Barnett v. LeMaster, 167 F.3d 1321, 1323 (10th Cir. 1999); Rhine v. Boone, 182 F.3d 1153, 1156 (10th Cir. 1999), cert.

denied, 528 U.S. 1084 (2000).  It appears to have run unabated
for the following 7 months and expired in early December, 2005,
over a month before Morton executed his federal Petition.

In addition to the statutory tolling discussed above, the
limitations period may be subject to equitable tolling.  However,
equitable tolling is warranted only in "rare and exceptional
circumstances." Gibson v. Klinger, 232 F.3d 799, 808, *quoting*
Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998), cert. denied,
526 U.S. 1074 (1999); Felder v. Johnson, 204 F.3d 168, 170-71 (5th
Cir.), cert. denied, 531 U.S. 1035 (2000).  To qualify for such
tolling, petitioner must demonstrate that extraordinary
circumstances beyond his control prevented him from filing his
federal petition on time, and that he diligently pursued his
claims throughout the period he seeks to toll.  Marsh v. Soares,
223 F.3d 1217, 1220 (10th Cir. 2000), cert. denied, 531 U.S. 1194
(2001).  The Tenth Circuit has stated that equitable tolling is
appropriate, for example, where a prisoner is actually innocent;
when an adversary's conduct or other uncontrollable circumstances
prevent a prisoner from timely filing; or when a prisoner
actively pursues judicial remedies but files a defective pleading
during the statutory period.  Burger v. Scott, 317 F.3d 1133,
1141 (10th Cir. 2003).

Complaints about unfamiliarity with the legal process, and
illiteracy, have been found to provide no basis for equitable
tolling.  See Scott v. Johnson, 227 F.3d 260, 263 FN3 (5th Cir.
2000), cert. denied, 532 U.S. 963 (2001).  Moreover, ignorance of
the law generally and of the AEDPA time limit in particular will

not excuse untimely filing, even for an incarcerated pro se
prisoner. <u>Marsh</u>, 223 F.3d at 1220; <u>Miller v. Marr</u>, 141 F.3d 976,
978 (10th Cir.), <u>cert denied</u>, 525 U.S. 891 (1998); <u>Gibson</u>, 232
F.3d at 808.

The court will give petitioner an opportunity to show that
his Petition should not be dismissed as time-barred.  However,
even if petitioner demonstrates that he is entitled to additional
tolling, the court is not convinced that grounds for federal
habeas corpus relief are stated.

**<u>DENIAL OF SPEEDY TRIAL</u>**

In petitioner's Motion to Correct Illegal Sentence pursuant
to K.S.A. 22-3504, filed in Saline County District Court on March
12, 2003, he argued his re-prosecution for aggravated battery was
barred due to denial of his speedy trial rights guaranteed by
K.S.A. 22-3401, 22-3402, and constitutional provisions.  He also
claims denial of speedy trial before this court.

This court finds petitioner is entitled to no relief on this
claim since the aggravated battery charge was dismissed and the
State declined to retry it.  Consequently, Morton has already
received all the relief to which he might have been entitled on
this habeas claim.  Furthermore, he is not currently incarcerated
on account of this conviction.

**<u>SUFFICIENCY OF EVIDENCE OF AGGRAVATED KIDNAPING</u>**

The only state conviction challenged in this federal Petition
under which petitioner is currently confined is aggravated

kidnaping.  Morton claimed on direct appeal that the evidence was insufficient to convict him of aggravated kidnaping because there was insufficient evidence, independent of the aggravated battery, that he took or confined the victim with the intent to inflict bodily injury.  Petitioner argued in his state post-conviction motion that "bodily harm to the victim is the additional element elevating kidnaping to aggravated kidnaping," (see K.S.A. 21-3421) and this element was not proven in his case.  Determining the precise claim raised by petitioner in the state courts is essential because this court may only consider those claims already presented to the state courts.  The KCOA hearing the appeal of the denial of petitioner's state post-conviction motion reasoned, "essentially, the issue is whether there was sufficient evidence at trial to support the conviction of aggravated kidnapping."  State v. Morton, No. 91385 (KCOA, Feb. 4, 2005).  This court agrees with the KCOA's articulation of petitioner's claim.

K.S.A. 21-3420 defines kidnaping as "the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person: . . . (b) to facilitate flight or the commission of any crime; (or) (c) to inflict bodily injury or to terrorize the victim or another . . . ."  Id.  Aggravated kidnaping "is a kidnapping, as defined in K.S.A. 21-3420, when bodily harm is inflicted upon the person kidnapped."  K.S.A. 21-3421.  "Bodily harm" is "any touching of the victim against the victim's will, with physical force, in an intentional, hostile, and aggravated manner, or the projecting of such force against

the victim by the kidnapper." Morton, No. 86100 at *10. The KCOA stated: "For the evidence to be sufficient under K.S.A. 21-3420(c), the confinement of the victim must be a separate act independent of the bodily injury." Morton, No. 86100 at *4, citing State v. Patterson, 243 Kan. 262, 265 (1988). Whether Morton intentionally caused bodily harm was a question of fact for the jury. Morton, No. 86100 at *9. Petitioner alleged in his state post-conviction motion that the State charged him with kidnaping under both subsections (b) and (c) of K.S.A. 21-3420. He argued[5] the State was relying on the rape "crime" to make the kidnaping aggravated under subsection (b); and the aggravated battery as the "bodily injury" to make the kidnaping aggravated under subsection (c). He asserted that since the jury returned a verdict of not guilty of rape and his aggravated battery conviction was overturned on appeal, the "bodily injury" element no longer existed; and the aggravated kidnaping conviction must therefore be vacated. He contended that all allegations regarding violence to the victim had been negated either by acquittal or dismissal.

Petitioner is correct that under Kansas law the difference between kidnaping and the aggravated kidnaping of which he was convicted is that the greater crime required a finding of the infliction of bodily harm. See K.S.A. 21-3421. It is clear that

_____

[5]       Counsel in petitioner's state post-conviction, appellate brief similarly argued: "[A]n aggravated kidnapping conviction requires proof beyond a reasonable doubt of bodily harm inflicted upon the victim. The state originally alleged 2 physical acts of violence against the victim - rape and aggravated battery. The jury acquitted Morton of rape, so that act cannot support a finding of bodily harm. The State elected not to retry Morton and the aggravated battery charge was dismissed. Thus, no finding regarding bodily harm can stem from that conviction.

rape or aggravated battery, if proven, would have satisfied the bodily harm element.  See State v. Peltier, 249 Kan. 415, 420, 819 P.2d 628 (1991), cert. denied 505 U.S. 1207 (1992).  However, petitioner has not established either factually or legally that only a conviction on either the rape or the aggravated battery charge could satisfy the bodily harm element in his case. Factually, petitioner ignores that there was evidence of other acts of violence to the victim patently sufficient to supply the bodily harm element.  Legally, the questions of what elements were required to establish aggravated kidnaping and what acts satisfy those elements are matters of state law and not grounds for federal habeas corpus relief.

Petitioner's claim depends upon two questionable premises. The first is that only a conviction of either aggravated battery or rape could supply the requisite element of bodily harm.  For this premise, petitioner cites the amended complaint[6], the trial jury instructions cited and exhibited by petitioner, Numbers 8[7]

_____

[6]     The Amended Complaint/Information exhibited by petitioner charged the defendant with unlawfully, willfully and feloniously taking or confining the victim by force, threat or deception with the intent to hold her:
. . . to facilitate the commission of a crime and bodily harm was inflicted upon (her).  K.S.A. 21-3421 (Aggravated kidnapping) . . . .
Or in the alternative, . . . to inflict bodily injury or to terrorize the victim and bodily harm was inflicted upon (her).  K.S.A. 21-3421 (Aggravated Kidnapping) . . . ."
Petition (Doc. 1), Exhib. 9.

[7]     Instruction No. 8 provided:
. . . You are instructed that the alternative charges constitute one crime.
To establish this charge, each of the following claims must be proved:
    1.     That the defendant took or confined Yvette Morton by force, threat or deception;
    2.     That it was done with the intent to hold Yvette Morton to facilitate the commission of any crime;
    3.     That bodily harm was inflicted upon Yvette Morton; and
    4.     That this act occurred on or about the  28th day of August, 1999, in Saline County, Kansas.
Petition (Doc. 1), Exhib. 10.

and 12[8], and the jury verdict form[9].  This premise is refuted, instead of supported, by petitioner's exhibits of the record.

The charging document in this case, as exhibited by petitioner, did not specify that the bodily harm element for the aggravated kidnaping charge was supplied when Morton committed aggravated battery or rape upon the victim.  Instead, it generally provided that Morton took or confined the victim "by force, threat or deception with the intent to hold such person to facilitate the commission of a crime and bodily harm was inflicted upon" her, "or in the alternative," with "the intent to hold such person to inflict bodily injury or to terrorize the victim and bodily harm was inflicted upon" her.

Nor has petitioner provided any evidence that the State made clear at trial it was only relying on the rape and/or aggravated battery to establish bodily harm, and not other evidence of violence or physical injury.  There is no indication that the prosecutor expressly told the jury, court, and opposing counsel that the State was relying only on the other two charged crimes to satisfy the element of bodily harm for the aggravated kidnaping.  The instructions do not provide that the jury had to

---

[8]    Instruction No. 12 pertinently provided:
To establish the lesser included crime of kidnapping under an alternative theory, each of the following claims must be proved:
1.    That the defendant took or confined Yvette Morton by force threat or deception;
2.    That it was done with the intent to hold such person to inflict bodily injury or to terrorize the victim; and
3.    That this act occurred on or about the 28th day of August, 1999, in Saline County, Kansas. Petition (Doc. 1), Exhib. 11.

[9]    The verdict form exhibited by petitioner provided "We, the jury, find the defendant guilty of Aggravated Kidnapping under the theory that the defendant took or confined the victim with intent to hold the victim to inflict bodily injury or to terrorize the victim."

convict on either rape or aggravated battery in order to convict for aggravated kidnaping.   They provide only that intent to inflict bodily injury had to be established.

Petitioner's second premise is that there can be no evidence of "bodily harm" now that the State cannot retry him on the aggravated battery charge.   Contrary to this premise, it plainly appears that evidence of bodily harm was presented at trial. Generally "bodily harm" includes any act of physical violence, even those without permanent injury.   Unnecessary acts of violence upon the victim, and those occurring after the initial abduction would constitute "bodily harm."   The testimony of the victim plainly showed that Morton committed other acts of violence upon her.   The State's appellee brief on direct appeal cited clear evidence from the record to support the jury's finding that bodily harm occurred, including:

> The defendant threw Yvette in the air and onto the bed. He got on top of her and choked her from behind.   He continued to push and physically fight with her throughout the incident.   He threw her on the floor and hit her head on the corner of the coffee table.   She passed out for a second or two.   He put his hands around her neck and she couldn't breathe.

Id. at 15 (Citations omitted).   The facts as stated by the KCOA similarly indicate multiple acts that could have been found to satisfy the bodily harm element.

Moreover, the state courts never held there was insufficient evidence of either aggravated battery or bodily harm.   The aggravated battery conviction was overturned because an instruction was not given on a lesser included offense, rather than on a finding of insufficient evidence.   The decision not to

11

re-try was purportedly made for practical reasons, not including a lack of evidence.  Thus, the reversal of the aggravated battery conviction and dismissal of the charge do not imply there were no facts to prove bodily harm.

The KCOA astutely found "the fallacy of Morton's argument is his assertion that a separate aggravated battery <u>conviction</u> is necessary to sustain the aggravated kidnapping conviction."  They reasoned the "State was not required to charge Morton with any type of battery in order to prosecute Morton for aggravated kidnapping based upon the infliction of harm."  Instead, the aggravated kidnaping charge required proof beyond a reasonable doubt only of bodily harm inflicted upon the victim, citing K.S.A. 21-3421.  For this finding, the KCOA cited Jury Instruction No. 8.  Considering petitioner's claim of insufficient evidence, the KCOA found the "independent" evidence of aggravated kidnaping was sufficient[10].  They reasoned:

> Here, . . . the victim was forced to remain in her home.  The act of throwing her down on the coffee table was not incidental to his earlier act of dragging her back to the house.  The evidence was sufficient to prove a confinement with the intent to commit bodily harm independent of the subsequent aggravated battery."

<u>Morton</u>, 86100 at *4.  They held that testimony describing

---

[10]   The KCOA on direct appeal discussed Morton's complaint that the court failed to give a "jury unanimity instruction" on the (inconsistent) theory that the evidence showed three distinguishable acts which could support aggravated battery and two separate acts which could support aggravated kidnaping.  The KCOA found no unanimity instruction was warranted; however, they did find that the aggravated battery involved multiple acts:

> Morton choked the victim on the bed and after she escaped to the living room . . , twice the victim tried to leave the house and twice Morton pulled her back in and then threw the victim down, causing her to hit her head on a coffee table.  When she woke up a few seconds later, Morton was again choking her.

<u>Morton</u>, 86100 at *6.

defendant's violent acts "clearly supported a finding of bodily harm which satisfies the element of the aggravated kidnapping conviction."

This factual finding by the jury and the legal and factual findings of the state appellate court are not shown to have involved an unreasonable determination of the facts or an unreasonable application of clearly established Federal law. See 28 U.S.C. 2254(d). It follows that petitioner is not entitled to federal habeas corpus relief. Petitioner is hereby given time to show cause why this Petition should not be dismissed for failure to state a valid claim for federal habeas corpus relief.

## MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS

Petitioner has submitted his Inmate Bank Statement for one month, which has been filed as a motion to proceed in forma pauperis (Doc. 2). However, this form does not amount to an adequate motion for in forma pauperis status. Petitioner must file a "Motion for Leave to Proceed In Forma Pauperis." He must include with this motion an affidavit showing all his assets, and stating his inability to pay the filing fee, and a certified copy of his institution account statement for the 6-month period preceding the filing of his Petition as required by 28 U.S.C. 1915(a)(1)and(2). Petitioner is given time to file such an adequate motion or submit the filing fee of $5.

**IT IS THEREFORE ORDERED** that petitioner is granted twenty (20) days in which to submit a proper Motion for Leave to Proceed In Forma Pauperis, or submit the filing fee of $5.

13

**IT IS FURTHER ORDERED** that petitioner is given twenty (20) days to show cause why this Petition should not be dismissed for the reasons stated herein.

The Clerk is directed to transmit to petitioner a set of forms for filing a motion for leave to proceed in forma pauperis.

**IT IS SO ORDERED**.

Dated this 15th day of February, 2006, at Topeka, Kansas.


s/Sam A. Crow
U. S. Senior District Judge

14